F26SSANS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                                    11 CR 569 (PAC)

PABLO IVAN SANTIAGO,

          Defendant.

------------------------------x

                                New York, N.Y.
                                February 6, 2015
                                10:15 a.m.

Before:

                HON. PAUL A. CROTTY,

                            District Judge

                  APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
JESSICA MASELLA
    Assistant United States Attorney

GLENN A. GARBER
    Attorney for Defendant

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | (Case called) |
| 2  | THE COURT:  Mr. Santiago, how are you? |
| 3  | THE DEFENDANT:  Nervous. |
| 4  | THE COURT:  We are here for sentencing.  I will work |
| 5  | off the January 8, 2015 PSR, not the earlier PSR. |
| 6  | Do you have any correction to the facts as stated in |
| 7  | the PSR, Mr. Garber? |
| 8  | MR. GARBER:  No, your Honor. |
| 9  | THE COURT:  I am going to accept the facts as accurate |
| 10 | and adopt them. |
| 11 | The guidelines calculation pursuant to your sentencing |
| 12 | agreement is offense level 31 and criminal history category |
| 13 | of I, resulting in a guideline calculation of 108 to |
| 14 | 135 months.  Is that correct, as well, Mr. Garber? |
| 15 | MR. GARBER:  Yes, that's correct, your Honor. |
| 16 | THE COURT:  I am going to accept that as accurate. |
| 17 | Now, I received your submission of last night, |
| 18 | Mr. Garber.  I am sure you want to elaborate on that. |
| 19 | MR. GARBER:  Yes. |
| 20 | THE COURT:  Please go ahead. |
| 21 | MR. GARBER:  Sorry for the late submission. |
| 22 | THE COURT:  I am a speed reader. |
| 23 | MR. GARBER:  It was short.  I finished a trial late |
| 24 | last week.  I guess it was also difficult for me to write it |
| 25 | because I wanted to say the right things. |

1            THE COURT:  Yes.

2            MR. GARBER:  I have lived with this case for a long

3   time.  It has been maybe three years since I got assigned.

4   Ivan has been in jail now 25 months.  It has gone through so

5   many twists and turns.  It was a very difficult case to

6   understand.  Not from, I guess, an offense perspective.  I

7   mean, the offense is bad.  And you know.  There was a Fatico

8   hearing and you have lived with this case for a long time too.

9            It was a bad conspiracy, but the perplexing part of it

10  was Ivan.  And Ivan and how he plugged into this case.  He is

11  mentally ill, as you know, and there is no dispute about that.

12  I could have flooded you with medical psych records for 25

13  years, which I have in my file, and like two Redwelds.  There

14  is no dispute he is a paranoid schizophrenic and he suffered

15  for a long time with his disease.

16           I guess what was so difficult about this sentencing is

17  I don't want you to think that I am trying to make an excuse or

18  he is trying to make an excuse for his involvement, but in a

19  way, we want you to understand, to the best you can -- I don't

20  even know if I can fully understand -- how a guy like this, who

21  has such a loving family and has been through so much in his

22  life and all the bad things that happened to him as a kid, kind

23  of put him in this mindset that family is so important and I

24  want to do all I can for these people who are here, who have

25  been in my office for two years and calling me repeatedly about

1  Ivan and trying to educate me about this complex creature, my
2  client.
3         How he gets involved in this thing, it is a mitigating
4  thing.  It is not like he is getting money for this.  It is not
5  like he is doing the things that your typical criminals would
6  do or would receive in response to his conduct.  The only real
7  answer is what I say in my memo, is that he has got this
8  bizarre almost -- I don't know if it is bizarre, I shouldn't
9  say this -- this obsessive dysfunctional thing going on.
10        And Levit, who was his younger brother, was somebody
11 who he felt he had to protect.  The stories he is telling me
12 about first stealing a pack of gum in the supermarket and Ivan
13 intervenes and helps him out of his problem.  Obviously that is
14 a microcosm of what he was doing.  He felt so compelled to be
15 part of Levit's life and to help Levit that that really is why
16 he got involved.
17        It doesn't excuse his conduct.  It doesn't indicate
18 that the offense is any less offensive.  But the offender is an
19 odd person and driven by trying to protect Levit from all of
20 the crazy things he got involved in.  Levit was this volatile
21 guy who would anger people.  He had all these underlings who he
22 was supporting and it was important that they were fed.  The
23 conspiracy went forward and the drugs were flowing, and Ivan
24 gets stuck in this thing because he is driven to help Levit.  I
25 think there is no doubt or dispute about that.

1          I am hoping that the question for you is, well, I am
2  starting at 108 -- and I am hoping that is where you are
3  starting, kind of drawing from my experience in this courthouse
4  and so forth -- and say how much of a discount is that worth.
5  We have a guy who suffered for many years, a veteran of the
6  armed forces, nervous breakdown.  There are also a number of
7  suicide attempts that I don't mention in my memo.  I am hoping
8  you say, look, I get it, but there still has to be some
9  punishment here and the question is what.
10         I know that a variance from 108 down to 29, which is
11 where he is at with time served, is a large variance.  I guess
12 I am going to go out on a limb and ask you to consider that,
13 because I do think that he has been punished severely, his
14 family will continue to suffer.  His pension, which is really
15 what has supported him and helped support his family, is
16 definitely needed and it is in a state of suspension, or
17 actually it is not yet, when he gets sentenced, it will be.
18         THE COURT:  Mr. Garber, I don't want to cut you off,
19 but you are suggesting that I sentence him at an offense level
20 of 29?
21         MR. GARBER:  No, a variance to 29 months.  We are at
22 108.  I am saying that because that is at the bottom end of the
23 range.
24         THE COURT:  Yes.
25         MR. GARBER:  I am asking to you vary down to time

1  served, which is 29 months.  The guidelines are what the
2  guidelines are based on our stipulation.
3           THE COURT:  Yes, I understand.
4           MR. GARBER:  So that is the point.
5           Hardship will befall his family.  He has suffered so
6  much in the last 29 months, and I do think that for him,
7  distinguishing from your typical inmate, his time in prison is
8  going to be much more severe than a typical person because of
9  all the emotional issues he has, because of the drugs that he
10 is taking and the modulation.  It is like a work in progress.
11 They had to change his drug medication because they had to use
12 generics.  It is this up-and-down thing that he suffers through
13 on a weekly basis, daily basis probably.
14          I think that is a factor for the court, saying, well,
15 what is this offender going to live through compared to a
16 typical offender?  Is his 108 going to be the same as somebody
17 else's 108?  And I think the answer is no, it is a lot worse.
18 I don't know if I am elaborating much more, okay, on what I
19 said in my memo, other than to try to give you some sort of a
20 personal feel for it, because I have lived with him and his
21 family for so long.  I just want to communicate to you how
22 confounding this case is and how I think worthy of a variance,
23 given how he got involved in this, why he got involved in this,
24 and the unique features of this man and his circumstances.
25          Thank you.

1           THE COURT:  Thank you.

2           Ms. Masella?

3           MS. MASELLA:  Your Honor, the government is requesting

4  a sentence within the agreed upon guideline range in this case.

5  This particular defendant had a significant role in what the

6  court is already aware is a very serious crime.  He knew and

7  understood that he was assisting with a large-scale drug

8  organization, and he did so at some of the higher levels in the

9  sense that he helped to coordinate with arranging for large

10 quantities of cocaine and marijuana and tried to smooth over

11 the relationships with the suppliers and tried to find new

12 suppliers at times they needed new suppliers.  The agreed upon

13 facts are that he did so advising and assisting Fernandini over

14 the course of several years, at least, and throughout the

15 conspiracy period.

16          This particular defendant was not personally involved

17 with guns or violence, and that is one of the reasons why we

18 agreed that he is eligible for the safety valve in this case

19 and that he is eligible for a sentence below the otherwise

20 applicable mandatory minimum.  So the government has

21 acknowledged that he is differently situated than many of the

22 other defendants in this case, many of whom got the ten-year

23 mandatory minimum and some of them got much higher sentences.

24          Still, we think that in doing that, we have taken into

25 account the fact that his role, even though he operated at sort

of higher level with an awareness of the large drug quantities and he certainly was at some point aware of the violence of Fernandini and others were carrying out, he is differently situated than people who were directly involved in that kind of conduct. He did have a different reason than your typical reason for becoming involved with this sort of conspiracy.

Nonetheless, given his role and his understanding of what was going on, it is the government's position that a significant term of imprisonment is warranted, and that is why we are requesting a sentence in the guideline range.

THE COURT: Mr. Garber, let me ask you a question. In your letter, at page three, just before you quote from Mr. Santiago, you say that: "Ivan would try to solve the problems even though he resided in Florida or he was removed from day-to-day affairs. This included making excuses for Levit's behavior, troubleshooting when Levit would frustrate the relationships with his drug connections, and relatedly trying to keep the workers at bay so that they would not kill Levit."

My note to myself as I am reading this is, another way to say this is, he was a willing and knowing conspirator, but his motive was not the typical motive of a conspirator, it was his love for his brother. Then I go down and I read Mr. Santiago's statement, as Ivan states in the second full paragraph: "I don't deny being involved in this business, but

I did it out of love."  So he was involved in the conspiracy and he had a different motivation, but I don't know how much -- in your view, he did it because he loved his brother, he is entitled to time served, is that the argument, even though his conduct facilitated Fernandini staying in business for a lot longer than he would have otherwise been in business, doing damage on a continuing basis to people in the Bronx?

MR. GARBER:  Well, I guess you're boiling it down in an accurate way, but to say --

THE COURT:  I am not boiling it down.  I am quoting to what you said in your letter.

MR. GARBER:  I know, but you're interpreting the sentence that I gave, you say you interpret it a certain way, and I am not saying that you're interpreting that wrong.  To say that he was involved, okay, and because he did it for love, give him time served, I guess one could sort of boil my argument down to that.

But when you are looking at the offender and characteristics of the offender and analyzing it in the context of 3553(a), I mean, I think you have to ask yourself, look, the guy is a criminal, he has to be punished, okay, but I have to look at his characteristics, his character.

THE COURT:  I am going to look at his character.  I recognize that he was trying to serve his country and he tried to serve this country for the best reasons, and he has raised a

1    good family and they have achieved some success.  Those are all

2    positive characteristics.  I looked at those in consideration.

3              We have at a core his conduct over an extended period

4    of time which facilitated the operation of a major league drug

5    conspiracy, which did, over a long period of time, a lot of

6    damage.

7              MR. GARBER:  I think that that is right.  I think that

8    if he was not involved, I think he probably would have been

9    killed.

10             THE COURT:  I don't know if he would have been killed,

11   but if he would have been cut off from the source of supply,

12   maybe the conspiracy wouldn't have lasted as long as it did.

13             MR. GARBER:  I think that that is true.  I think that

14   is true.  We are not denying his participation at all, and I

15   understand that that is a very important factor for the court.

16   I am just trying to give you some understanding, which I think,

17   to me, it is obvious the government is not contesting his

18   motivations.  It is an unusual feature of the case.

19             THE COURT:  I agree with that.

20             MR. GARBER:  We are just asking that you take that

21   into consideration with all of the other factors that you must

22   consider.

23             THE COURT:  Mr. Santiago, you have the opportunity now

24   to speak if you wish to do so.  Do you want to say anything?

25             THE DEFENDANT:  Yes.  Yes, sir.

1        THE COURT:  If you would be more comfortable sitting
2   down, please sit down.
3        THE DEFENDANT:  Your Honor, first I want to say I am
4   sorry for being here, to you and to my family.  It was never my
5   intention to do anything wrong.  I never intended to do the
6   wrong thing.  I always felt like I was trying to do the right
7   thing.  Your Honor, you know, I always felt that my brother was
8   going to get killed and the thought of it and having to explain
9   it to my mother, I thought that really did put my mind in a
10  mindset and it was difficult for me, your Honor.  It was
11  difficult because I didn't know what to do.  I never intended
12  to do the wrong thing.  I am a good man.  I love my family.  I
13  love my family very much, but I also love my brother.
14       Your Honor, I am sorry, your Honor, for what I have
15  done.  I never meant to do anything wrong.  I didn't think I
16  was doing anything wrong.  I thought I was just trying to keep
17  my brother alive.  I take care of my family.
18       THE COURT:  Anything else, Mr. Santiago?
19       THE DEFENDANT:  My mind is racing, your Honor.  There
20  are so many things that are going through my mind right now.  I
21  am sorry.
22       THE COURT:  It's all right.  Do you want to take a few
23  minutes and talk to Mr. Garber and then we will resume?
24       THE DEFENDANT:  I am okay, your Honor.
25       THE COURT:  Are you finished making your statement,

1    Mr. Santiago?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  As Mr. Garber's suggests, we all have been

4    living with this case for some period of time.  It goes back

5    three or four years.  We did have a Fatico hearing, which

6    Mr. Fernandini asked for, where we had a fairly detailed view

7    of how this conspiracy operated over a period of time, the

8    impact that it had on the neighborhood, and almost all the

9    defendants have now been sentenced.  Mr. Santiago is the last

10   to be sentenced.

11           I have certainly read the PSR and the sentencing

12   agreement as set forth in the PSR at paragraphs 61 to 70 and

13   summarized in Mr. Garber's letter of yesterday resulting in the

14   guideline calculation of offense level of 31 and a criminal

15   history category of I.  That is important because, as

16   Mr. Garber knows, we all know and recognize that is the

17   starting point.  It is certainly not the ending point.  I can

18   sentence within the guidelines, I can go above the guidelines,

19   and I can go below the guidelines because the guidelines are

20   discretionary and not mandatory.

21           As Mr. Garber points out, in the language of the

22   statute, I have to take into consideration the history and the

23   characteristics of Mr. Santiago.  As in the PSR and as

24   Mr. Garber's letters point out, Mr. Santiago had a very, very

25   hard upbringing, some of the things that occurred during his

1  childhood were truly horrific, but he volunteered to serve his
2  country, and I certainly value that.  That is a contribution, a
3  valid contribution, to society.  He has raised a good family
4  and tried to do the right thing by his children, all of which I
5  commend him for.  I certainly take that into consideration as
6  part of his history and characteristics.
7       So he has done some good work.  His love for his
8  family and trying to preserve and protect his brother from the
9  consequences of his criminal enterprises, certainly that led
10 Mr. Santiago astray and into a life where he didn't want to be.
11 But as he says, "I don't deny being involved in the business."
12 His motive is a little bit different, it is a more protective
13 motive, but that doesn't change his conduct.  Indeed his
14 conduct facilitated the continuation of this drug conspiracy
15 which existed for a number of years and did tremendous damage
16 in the Bronx, and in particular, to the Creston Avenue
17 location.
18      In the language of the statute, this is a serious
19 offense.  I have to promote respect for the law and provide a
20 just punishment for the offense.  I have to afford adequate
21 deterrence to criminal conduct not only by Mr. Santiago, but by
22 others who are similarly situated.  Certainly, in light of
23 Mr. Santiago's mental condition, we have to do something to
24 make sure that he continues to get his medical care.  I have
25 taken all of this into consideration.  I have recognized his

1  psychiatric history.  I have read the report of Dr. Paradis and
2  read her conclusions, her analysis of Mr. Santiago, and I have
3  taken that into consideration as well.
4         I believe that a sentence at the guideline range is a
5  little bit greater than necessary to achieve the functions of
6  the sentencing guidelines.  Accordingly, I am going to impose a
7  sentence of 84 months of incarceration.  The term of supervised
8  release at five years.  I must impose a special assessment of
9  $100.
10        The supervised release is subject to the mandatory
11 conditions, including the drug testing condition, and it is
12 subject to the stated conditions 1 through 13, along with the
13 following special conditions:
14        Mr. Santiago is to participate in a mental health
15 program approved by the probation office, and he is going to
16 continue to take prescribed medications unless otherwise
17 instructed by the healthcare provider.  He is to contribute to
18 the cost of services rendered not covered by a third party, if
19 he has the ability to pay.  I authorize the release of
20 available psychological and psychiatric evaluations and reports
21 to the healthcare provider.
22        Mr. Santiago is to make his personal residence, place
23 of business, vehicle, and any other premises under his control
24 to a search on the basis that the probation officer has
25 reasonable belief that contraband or evidence of a violation of

1   the conditions of release may be found.  The search has to be
2   conducted at a reasonable time and in a reasonable manner.
3   Failure to submit to a search may be grounds for revocation.
4   Mr. Santiago is to inform any of the residents at his premises
5   that he may be subject to search.  Mr. Santiago is to report to
6   the nearest probation office within 72 hours of his release.
7   He needs to be supervised in the district of his residence.
8            That is the sentence I intend to impose, Mr. Garber.
9   Any objections other than the ones you have already voiced?
10           MR. GARBER:  No, your Honor.
11           THE COURT:  The sentence is imposed.
12           Do you have any request for place of incarceration?
13           MR. GARBER:  Yes.  He would ask to be placed in the
14  Miami area, or as close to Miami as possible, which is where
15  his family resides.
16           THE COURT:  I will do that.
17           MR. GARBER:  Just an indication, he should be
18  evaluated for mental health issues, because I think once he
19  gets to a permanent facility, they are going to probably make
20  their own determinations as to what medications he should have.
21           THE COURT:  I will make that request as well.
22           MR. GARBER:  Thank you.
23           THE COURT:  Sentence is imposed.
24           Now that I imposed sentence, Mr. Santiago, under
25  Rule 32 of the Federal Rules of Criminal Procedure, I have to

F26SSANS

1  advise you as follows:
2          You have the right to appeal the sentence that I have
3  just imposed.  If you can't afford to pay appeal costs, again,
4  ask for permission to appeal *in forma pauperis*.  If you so
5  request, my clerk will immediately prepare and file the notice
6  of appeal on your behalf.  The judgment and conviction will be
7  entered by the close of business today.  You have 14 days in
8  which to take an appeal.
9          Are there any open counts, Ms. Masella?
10          MS. MASELLA:  There are, your Honor, which the
11  government moves to dismiss with respect to this defendant.
12          THE COURT:  The open counts with respect to
13  Mr. Santiago are dismissed.
14          Anything else, Ms. Masella?
15          THE DEFENDANT:  No, your Honor.  Thank you.
16          THE COURT:  Mr. Garber?
17          MR. GARBER:  No, your Honor.
18          THE COURT:  Thank you very much.
19                              o0o
20
21
22
23
24
25